

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-14-00689-CV

**IN THE INTEREST OF R.G. II**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01552
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

Appellant mother ("Mother") appeals the trial court's order terminating her rights to her child, R.G. II.  The Texas Department of Family and Protective Services ("the Department") moved to terminate Mother's parental rights on numerous grounds.  *See* TEX. FAM. CODE ANN. §§ 161.001(1)(A)-(G), (I)-(K), (N)-(R), 161.003 (West 2014).  After a hearing, the trial court found Mother's parental rights should be terminated because she: (1) constructively abandoned R.G. II; and (2) failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of R.G. II.  *See id.* §§ 161.001(1)(N), (O).  The trial court further found termination would be in the best interest of the child pursuant to section 161.001(2).  *Id.* § 161.001(2).  On appeal, Mother contends the evidence is legally and factually insufficient to

support the trial court's findings that she violated subsections (N) and (O) of section 161.001(1), and that termination was in the child's best interest. We affirm the trial court's judgment.

## BACKGROUND

The record shows R.G. II was born in March of 2013. Because both parents had drug abuse issues, the Department became involved. Initially, the child was placed with a paternal aunt. Ultimately, however, the Department determined the placement was unsuitable and sought and was granted temporary managing conservatorship of R.G. II. The child was placed into foster care where he has remained.

Eventually, the Department sought to terminate Mother's parental rights.[1] After a hearing, the trial court ordered Mother's parental rights terminated, finding she had constructively abandoned the child and failed to comply with the order that set out the steps she had to take to be reunited with her son. Thereafter, Mother perfected this appeal.

## ANALYSIS

On appeal, Mother raises three issues. In her first two issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that she violated subsections (N) and (O) of section 161.001(1) of the Family Code. She contends in her third issue that the evidence is legally and factually insufficient to support the trial court's finding that termination was in R.G. II's best interest.

### *Standard of Review*

Under the Texas Family Code, a court has authority to terminate a parent's rights to her child only upon proof by clear and convincing evidence that she committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best

---

[1] The Department also sought to terminate the parental rights of R.G. II's father. However, the father's termination is not at issue before this court as he did not appeal the termination order.

interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). The Family Code defines "clear and convincing evidence" as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to her child results in permanent and unalterable changes for parent and child, implicating due process. *E.A.G.*, 373 S.W.3d at 140. Therefore, when reviewing a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's findings and judgment, and any disputed facts are resolved in favor of that court's findings, if a reasonable fact finder could have so resolved them. *Id.* We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the findings of the trier of fact, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### *Constructive Abandonment*

As noted above, one of the grounds for termination of Mother's parental rights was constructive abandonment pursuant to section 161.001(1)(N) of the Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(N). Under that provision, a trial court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department six months or more, and:

> (i)     the department . . . has made reasonable efforts to return the child to the parent;
>
> (ii)    the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii)   the parent has demonstrated an inability to provide the child with a safe environment.

*Id.* Mother does not dispute that R.G. II was in the temporary managing conservatorship for six months or more. Nor does she challenge the evidence relating to the Department's proof that she has demonstrated an inability to provide her child with a safe environment. Rather, Mother argues the evidence is legally and factually insufficient to establish the Department made reasonable efforts to return R.G. II to her or that she has not regularly visited or maintained significant contact with him. *See id.* § 161.001(N)(i), (ii). We disagree.

*Reasonable Efforts*

The evidence is undisputed that although Mother visited R.G. II in July 2013 — the month after the Department obtained temporary managing conservatorship — she was incarcerated in August 2013, and has not seen R.G. II since that time. Mother was incarcerated for drug possession and remained incarcerated at the time of trial. Mother testified she "could be getting released any day from now," but admitted she could remain incarcerated until June of 2015.

This court has held the requirement that the Department has made reasonable efforts to return the child to the parent may be inapplicable when the parent is incarcerated. *In re A.Q.W.*, 395 S.W.3d 285, 288 (Tex. App.—San Antonio 2013, no pet.); *see In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied). As noted above, it is undisputed the Mother was incarcerated in August 2013 and remained incarcerated at the time of trial in September 2014. Accordingly, the "reasonable efforts" element may be inapplicable because Mother was incarcerated.

However, even if the "reasonable efforts" element is applicable, as the court held in *In re D.S.A.*, 113 S.W.3d 567 (Tex. App.—Amarillo 2003, no pet.), we would hold the Department proved by clear and convincing evidence that it made reasonable efforts to return the child to Mother through a surrogate.

In *D.S.A.*, the appellate court suggested that section 161.001(N) should not be read too literally. 113 S.W.3d at 573. According to the court, returning the child to the parent pursuant to section 161.001(N)(i) does not necessarily mean that the child has to be physically delivered to the incarcerated parent. *Id.* Rather, the court seems to suggest the Department must establish an absence of an acceptable surrogate — a relative, friend, or spouse — willing to take custody of the child on behalf of the incarcerated parent. *Id.* at 573–74.

If we were to apply the reasoning of the *D.S.A.* court, we would hold the Department produced evidence that it made efforts to place the child with family members, but no acceptable person was available to take custody of R.G. II on behalf of his mother during her incarceration. The Department case worker, Molly Henry, testified Mother "hasn't provided any relatives that are willing to help her and support her in taking care of [R.G. II]." Although Mother testified that her mother and some cousins might be willing to take R.G. II under the circumstances, Ms. Henry specifically testified she contacted the grandmother who advised that she would not be able to take care of R.G. II; two of Mother's other children are already in grandmother's custody. Mother never provided the name of any cousin or other person who might be willing and able to care for R.G. II. As for R.G. II's father, Ms. Henry testified that although he completed almost all of his service plan, he refused to allow her access to his home, and later seemed to disengage from any attempt to see his son or obtain custody. The father did not appear at the termination hearing and has not contested the trial court's order terminating his parental rights. Finally, the evidence shows the Department initially placed the child with a paternal aunt, but drug issues in that home required that R.G. II be removed and placed in foster care.

Thus, we hold that even if the "reasonable efforts" element was applicable in spite of Mother's incarceration, the Department presented sufficient evidence to permit the trial court to find it made reasonable efforts to return R.G. II to Mother through a surrogate. The Department established no one was available to take custody of R.G. II on Mother's behalf during her incarceration.

*Regular Visitation and Significant Contact*

Mother also contends the evidence is lacking with regard to the trial court's finding that she has not regularly visited or maintained significant contact with R.G. II. The evidence shows Mother visited R.G. II prior to her incarceration, but since that time has had no contact with him.

Although Mother testified she attempted to contact her case worker and the ad litem for the child by letter, she specifically stated the letters were sent in an attempt to find out about her son's emotional and physical health. She never claimed she wanted to contact her son, and there is no evidence she attempted to do so. *See D.S.A.*, 113 S.W.3d at 574 (recognizing that incarceration does not render it impossible for parent to maintain significant contact with child; parent could pursue significant relationship, at very least, through written correspondence). Moreover, as the judge of Mother's credibility, the trial court could have determined Mother did not attempt to contact either the case worker or the ad litem — despite her claims. Admittedly, Mother saw Ms. Henry in March of 2014, but there is no indication that she asked Ms. Henry to provide information that would permit her to contact her son by letter or otherwise.

Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's finding that Mother constructively abandoned R.G. II. *See J.P.B.*, 180 S.W.3d at 573. We overrule Mother's first issue.

*Failure to Comply with Court Order*

In her second issue, Mother contends the evidence is insufficient to establish she failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of R.G. II. *See id.* §§ 161.001(1)(N), (O). In other words, Mother contends the evidence is insufficient to establish she failed to complete the plan of service prepared by the Department.

As stated by the supreme court, "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination," assuming there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, to succeed on appeal, an appellant must establish all of the grounds upon which the trial court based its termination order lack sufficient evidence or that there is insufficient evidence to support the best interest finding. *See id.* at 363. Here, we have determined the evidence was legally and factually

sufficient to support the trial court's decision to terminate Mother's parental rights on grounds of constructive abandonment pursuant to section 161.001(1)(N), and as we explain below, the evidence is also sufficient to support the trial court's best interest finding. Accordingly, we need not address whether the evidence was sufficient to support the trial court's finding under section 161.001(1)(O) that the Mother failed to comply with a court order that set out the actions necessary for her to regain custody of her child. *See id.*

### *Best Interest*

Finally, Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her relationship with R.G. II was in his best interest. Courts indulge in the strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). We also presume, however, that permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider that factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's

family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *see In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.).

Courts may also take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.*

Additionally, although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)). Moreover, in conducting a best interest analysis, a

court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *A.S.*, 2014 WL 5839256, at \*2 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Finally, a fact finder may judge a parent's future conduct by her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

In this case, there is little evidence on either the statutory or *Holley* factors. However, we hold that the evidence that does exist is legally and factually sufficient to support the trial court's finding that it was in R.G. II's best interest to terminate his mother's parental rights.

The record establishes R.G. II was removed from his parents soon after his birth. At the time of his birth, Mother tested positive for Xanax, and Ms. Henry testified both Mother and R.G. II's father had drug issues. Initially, the child was placed with a paternal aunt. However, when R.G. II was approximately three-months-old, the Department discovered drug issues in the aunt's home and the Department sought and was granted temporary managing conservatorship. R.G. II was removed and placed in foster care. R.G. II remained in foster care and was still in foster care at the time of trial. On the day the trial began, R.G. II was approximately eighteen-months-old. Early on, Mother visited R.G. II, but as noted above, she was incarcerated in August 2013 for drug possession, and has not seen R.G. II since that time — more than a year. At the time of trial, Mother remained incarcerated and although Mother testified she could be released at any time, she admitted she could remain incarcerated until June of 2015.

Ms. Henry testified Mother failed to provide the Department with names of any relatives that might be willing to take custody of R.G. II. At trial, Mother testified her mother and some cousins might be willing to take R.G. II. However, Ms. Henry contacted the grandmother who advised that she would not be able to take care of R.G. II; two of Mother's other children are already in the grandmother's custody. As for R.G. II's father, Ms. Henry testified that although

he completed almost all of his service plan, he refused to allow her access to his home, failed to respond to attempts to contact him, and later seemed to disengage from any attempt to see his son or obtain custody. Ms. Henry stated she informed Mother — who believed the child would be placed with his father — by letter that the child's father was no longer engaged in an attempt at reunification; Mother denied receiving this information. As we have previously stated, R.G. II's father's rights were terminated and he has not appealed that decision.

According to Ms. Henry, Mother has not shown an ability to provide R.G. II with a safe and stable home environment. Mother testified that when she leaves prison, she intends to stay with her mother, who has custody of her other children. She said this would allow R.G. II to grow up with his siblings. However, as we set out above, Ms. Henry contacted the grandmother and was told she could not care for R.G. II. There was no testimony from the grandmother.

As to R.G. II's current foster placement, Ms. Henry testified it is a long-term placement and the parents provide "a safe and stable home environment" for the child. According to Ms. Henry, R.G. II is "doing really well" with his foster parents. She said he is healthy, happy, and reaching all of his developmental milestones. Ms. Henry stated the foster parents have been supportive of the goal of reunification, but if the biological parents' rights are terminated, the foster parents are interested in adopting R.G. II. The foster parents attended the termination hearing.

Ms. Henry testified termination was in the child's best interest because Mother is incarcerated, she has not cared for R.G. II, and has no relationship with him. Although Mother admitted fault in the removal of her son, and she testified she did not want her parental rights terminated, Ms. Henry stated that neither parent has demonstrated an ability or willingness to care for the child. She also testified Mother had not completed any of the items on her service plan, but admitted Mother signed up for a required program in the Bexar County Jail. However, her subsequent transfer to the Texas Department of Criminal Justice limited Mother's attempts to

complete her service plan requirements. Mother testified that in prison, she is taking parenting classes, a victim impact class, a "cognitive class," and a class on "informative health." Mother stated the purpose in taking the classes was to get her son back.

Based on the foregoing, we must conclude the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in R.G. II's best interest, i.e., the finding is supported by legally and factually sufficient evidence. *See In re J.P.B.*, 180 S.W.3d at 573. We therefore overrule Mother's third issue.

## CONCLUSION

We hold the evidence was legally and factually sufficient to allow the trial court to find: (1) Mother constructively abandoned R.G. II, violating section 161.001(1)(N) of the Family Code, and (2) termination was in R.G. II's best interest. Given the foregoing, we need not determine whether the evidence was sufficient to support the trial court's finding that Mother failed to comply with a court order that set out the terms for reunification. *See A.V.*, 113 S.W.3d at 362. Accordingly, we overrule Mother's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice