

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00002-CV

_____

IN THE INTEREST OF A.G.N. AND A.T., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 21C0409-CCL

Before Morriss, C.J., Stevens and Marion,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Sandee Marion, Chief Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

On the petition of the Department of Family and Protective Services (the Department), the trial court terminated Mother's parental rights to her two children, Astra and Amber.[1] This appeal, however, challenges the termination of the father's parental rights to each of those two children: Astra is Ryan's child, while Amber is Horace's child.[2]

After a DNA test yielded the result that Ryan could not be excluded as Astra's father because the probability of paternity was "99.999998%," the trial court terminated the parent-child relationship between Ryan and Astra. On appeal, Ryan argues that the trial court's determination of paternity was not supported by sufficient evidence because the DNA test results were not returned until after the determination of parentage. As a result, Ryan also argues that the trial court had no authority to terminate his parental rights.[3] Because Ryan stipulated that he was Astra's father, we find that Ryan's complaints related to paternity are moot.

The trial court also terminated the father-child relationship between Horace and Amber on grounds that Horace (1) constructively abandoned Amber, (2) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for Amber for not less than two years from the date of the Department's petition, (3) was placed on community supervision for being criminally responsible for the sexual assault of Mother, and (4) had a mental or emotional illness or deficiency that rendered him unable to

---

[1]We use pseudonyms to protect the privacy of the children. *See* TEX. R. APP. P. 9.8.

[2]Mother has not appealed the termination of her parental rights.

[3]Ryan does not challenge the trial court's finding that sufficient grounds existed to terminate his parental rights and that it was in Astra's best interests to do so.

provide for Amber's physical, emotional, and mental needs. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(N), (Q), (U), 161.003. Horace argues that legally and factually sufficient evidence was not presented to prove that sufficient grounds existed to terminate his parental rights to Amber.[4] We find that sufficient evidence supported the trial court's finding that Horace constructively abandoned Amber.

As a result, we affirm the trial court's judgment.

*(1)    Ryan's Complaints Related to Paternity Are Moot*

The Department's amended petition listed Ryan as Astra's alleged father. The DNA test result involved in Ryan's appeal was certified June 8, 2021. At a July 22 hearing, at which Ryan was present, the Department requested the trial court to establish the parent-child relationship because "DNA ha[d] confirmed [Ryan's] paternity." Ryan, who never contested paternity with the trial court, referred to Astra as "his child" during the hearing and testified that he "want[ed] to make the right decision, and [he] want[ed his] kid." After hearing his testimony, the trial court orally found that Ryan was Astra's biological father. On July 29, 2021, the trial court entered a written order establishing the parent-child relationship between Ryan and Astra after finding that genetic testing had determined Ryan was Astra's father. Yet, the DNA test results were not included in the trial court's file until December 14, 2021.

Because the DNA test results were not filed with the trial court or otherwise introduced into evidence by the time of the July 29 finding, Ryan argues, for the first time on appeal, that the trial court's paternity order was not supported by sufficient evidence. By separate point, he

---

[4]Horace does not challenge the trial court's finding that it was in Amber's best interests to terminate his parental rights.

3

also contends that, because sufficient evidence did not support the determination of parentage, the trial court somehow lacked authority to terminate his parental rights.[5] Both points are moot.

"A case becomes moot if a controversy ceases to exist between the parties at any stage of the proceedings, including the appeal." *Antolik v. Antolik*, 625 S.W.3d 530, 541 (Tex. App.—Texarkana 2021, pet. denied) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)). "An appellate court is prohibited from deciding moot controversies." *Id.* (quoting *Fry Sons Ranch, Inc. v. Fry*, No. 03-19-00684-CV, 2020 WL 6685772, at *1 (Tex. App.—Austin Nov. 13, 2020, pet. denied) (mem. op.) (citing *Nat'l Coll. Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999))).

Testimony about the DNA test results was admitted at the final hearing. During that time, in open court, Ryan judicially stipulated that he was Astra's father, testified, "I am her father . . . I want to provide everything I can for her," and testified that he loved her "very much."[6] Therefore, the record reveals that Ryan never contested paternity and, at the final hearing, stipulated to the issue of paternity. His appellate brief also does not contest the fact of

---

[5]Ryan argues that, because there was no order determining Ryan to be a parent, his parental rights could not be terminated. This point of error is meritless since Ryan was found to be Astra's parent. Moreover, the Texas Family Code gives the trial court the authority to terminate the parental rights of a parent. *See* TEX. FAM. CODE ANN. § 161.001. As applicable, the term "parent" is defined in the Texas Family Code as "a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, [or] a man who has acknowledged his paternity under applicable law." TEX. FAM. CODE ANN. § 101.024(a).

[6]*See* TEX. FAM. CODE ANN. § 160.623.

paternity. As a result, we find moot Ryan's points of error related to the trial court's determination that Ryan was Astra's parent.[7]

We affirm the trial court's order terminating Ryan's parental rights to Astra.

*(2)* *Sufficient Evidence Supported the Trial Court's Finding that Horace Constructively Abandoned Amber*

Next, Horace argues that the evidence is legally and factually insufficient to support the trial court's finding that statutory grounds existed to terminate his parental rights to Amber. "The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

---

[7]Even if the DNA test results should have been admitted prior to the trial court's July 29 order, Ryan has failed to show harm since he testified and stipulated to paternity.

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001 (Supp.); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009))). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is

6

such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002))); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d at 26)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.— Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

7

At the December 16, 2021, trial, Tonya Baker, a Department investigation supervisor, testified that, on April 1, 2021, Astra tested positive for methamphetamine at birth, requiring the removal of both Astra and Amber from Mother's home. The Department's petition was filed April 5. Because the Department introduced evidence that Horace was previously arrested for possession of marihuana and methamphetamine and had tested positive for drugs during a 2020 investigation by the Department, the trial court entered a temporary order on April 16 denying Horace the right to visit Amber until he produced negative drug test results.

Chantel Finley, a Department conservatorship worker, testified that Horace appeared at the temporary hearing where he was ordered to complete a family service plan, which included random drug testing, a psychological examination, counseling, substance abuse assessment, and parenting classes. According to Finley, the family service plan was provided to Horace and his counsel, but Horace refused to sign and did not complete his family service plan. Finley testified that Horace used drugs during the pendency of the case, had a drug-related criminal history, and failed to comply with drug-testing requirements. Finley said that Horace was incarcerated at times but clarified that the Department had requested Horace to submit to drug testing "a total of eighteen times when he was out [of jail]" and that he had failed to do so. On January 7, 2021, during the Department's investigation on a prior allegation, Horace had "admitted to being an addict."

Finley also testified that Horace was, at the time of trial, incarcerated on a current drug conviction. She added that Horace had not visited with Amber since the date of her removal from Mother's home but that he could have visited her had he submitted a negative drug test.

8

Becky Moore, a Court Appointed Special Advocate, testified that she had visited Horace's residence and did not believe that he could provide Amber with a safe, stable environment. According to Moore, Horace "was living in a shed with no running water [and] exposed wires going up and down the walls." The evidence also showed that, during the prior investigation, Horace's "portable building" had no bathroom or "cooktop stove" and that, while Amber was in Horace's care, she was taken to the emergency room for "a diaper rash that ha[d] blisters." Moore also testified that Horace's criminal history contributed to her belief that Amber was not safe in Horace's care.

Horace challenges the trial court's Ground N finding. Under Ground N, the trial court may terminate the parent-child relationship if it finds, by clear and convincing evidence, that the parent has

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i)  the department has made reasonable efforts to return the child to the parent;
> >
> > (ii)  the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii)  the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N). It is undisputed that Amber was in the Department's temporary managing conservatorship for not less than six months. Also, Horace does not contest that the Department made reasonable efforts to return Amber to Horace or that Horace

9

demonstrated an inability to provide the child with a safe environment.[8]  Instead, Horace argues only that the evidence was insufficient to prove that he did not try to visit or maintain contact with Amber.  We disagree.

Horace argues that there was no evidence that he did not want to visit Amber.  First, the Department was not required to prove that Horace had an insufficient desire to visit his child.[9] *See In re M.R.J.*, No. 07-13-00440-CV, 2014 WL 2591616, at *5 (Tex. App.—Amarillo May 9, 2014, no pet.) (mem. op.).  It was only required to show that Horace had not regularly visited or maintained significant contact with her.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N)(ii); *In re M.R.J.*, 2014 WL 2591616, at *5, *see also In re S.P.*, No. 09-21-00296-CV, 2022 WL 318441, at *8 (Tex. App.—Beaumont Feb. 3, 2022, no pet.) (mem. op.) ("Subsection N is silent about the voluntariness of a parent's failure to regularly visit or maintain significant contact with his children."); *In re I.D.*, No. 05-21-00244-CV, 2021 WL 4236878, at *5 (Tex. App.—Dallas Sept. 17, 2021, pet. denied) (mem. op.) ("[S]ubsection (N)(ii) says nothing about voluntariness of a parent's failure to regularly visit or maintain significant contact with a child.").

---

[8]"A family service plan is designed to reunify a parent with a child who has been removed by the Department." *In re J.C.*, No. 04-17-00828-CV, 2018 WL 1733139, at *3 (Tex. App.—San Antonio Apr. 11, 2018, no pet.) (quoting *In re A.Q.W.*, 395 S.W.3d 285, 288 (Tex. App.—San Antonio 2013, no pet.), *overruled on other grounds by In re J.M.T.*, 617 S.W.3d 604, 611 (Tex. App.—San Antonio 2020, no pet.).  "'Implementation of a family service plan by the Department is considered a reasonable effort to return a child' to his parent 'if the parent has been given a reasonable opportunity to comply with the terms of the plan.'"  *Id.* (quoting *In re A.Q.W.*, 395 S.W.3d at 289).  Also, Texas cases have concluded that illegal drug use "creates the possibility that a parent will be impaired or imprisoned, and thus, incapable of parenting."  *In re K.M.*, Nos. 01-19-00285-CV & 01-19-00286-CV, 2019 WL 3949483, at *7 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, pet. denied) (mem. op.) (quoting *In re K.R.G.*, No. 01-16-00537-CV, 2016 WL 7368082, at *7 (Tex. App.—Houston [1st Dist.] Dec. 15, 2016, pet. denied) (mem. op.)); *see In re N.F.*, No. 09-19-00435-CV, 2020 WL 2070286, at *24 (Tex. App.—Beaumont Apr. 30, 2020, pet. denied) (mem. op.); *In re L.E.S.*, 471 S.W.3d at 924.

[9]Evidence presented at the hearing showed that, in January 2021, Horace said that, "once the [prior investigation] case closed he would go back to using [drugs]" and "would do what [was] needed to keep [Amber] safe, even if [that] mean[t] a removal."

We disagree with Horace's argument that the no-contact order thwarted his ability to visit Amber. Texas "courts have determined that a trial court may conclude that a parent has failed to regularly visit or maintain significant contact with [a] child[] under subsection N even though the parent's visitation rights were abated by the court or there was a court order requiring a parent not have contact with the child[]." *In re S.P.*, 2022 WL 318441, at *8 (citing *Nuyen v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00147-CV, 2012 WL 3629427, at *6 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.); *Quiroz v. Dep't of Family & Protective Servs.*, No. 01-08-00548-CV, 2009 WL 961935, at *6 (Tex. App.—Houston [1st Dist.] Apr. 9, 2009, no pet.) (mem. op.)). Where the no-contact order establishes that it does not preclude the parent from seeing a child "based on factors beyond [the parent's] control," and "by the very nature of the order, [the parent] only had to come to court in order to have the order lifted," visiting the child is within the parent's control. *In re S.P.*, 2022 WL 318441, at *8 (quoting *Quiroz*, 2009 WL 961935, at *6); *see Nuyen*, 2012 WL 3629427, at *6). The trial court's April 16 temporary order merely stated that no visitation would be allowed "until the parents produce[d] negative drug test results," provided that the order would remain in effect "until further notice of the Court," and informed the parties that there would be a status hearing on May 20. Because taking needed drug tests was within Horace's control, Horace, not the trial court's order, prevented Horace's visitation with Amber. *See In re K.P.*, No. 11-20-00001-CV, 2020 WL 4038858, at *3 (Tex. App.—Eastland July 15, 2020, no pet.) (mem. op.) (evidence of abandonment was clear and convincing even though mother argued that she failed to regularly visit or maintain significant contact with children after removal because trial court prohibited her

11

from visiting children due to a positive drug test, something within mother's control); *see also In re X.A.S.*, No. 05-19-01082-CV, 2020 WL 1042520, at \*6 (Tex. App.—Dallas Mar. 3, 2020, no pet.) (mem. op.).

"Where a parent's own actions caused the inability to visit his [child], a trial court may conclude there is clear and convincing evidence that the parent failed to regularly visit or maintain significant contact with the children under subsection N." *In re S.P.*, 2022 WL 318441, at \*8 (citing *In re K.P.*, 2020 WL 4038858, at \*3). Here, Finley testified, and it was undisputed, that Horace had not visited Amber since she was removed from Mother's care in April 2021. Finley also testified that Horace would have been allowed to visit Amber had he provided a negative drug test result and that he had been given eighteen opportunities to do so but had refused. On this record, we conclude that legally and factually sufficient evidence supported the trial court's finding that Horace failed to regularly visit or maintain significant contact with Amber.

Having found that sufficient evidence supports the trial court's Ground N finding, we need not consider Horace's arguments on the remaining statutory grounds. *See In re E.J.Z.*, 547 S.W.3d at 343. As a result, we affirm the trial court's order terminating Horace's parental rights to Amber.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     May 2, 2022
Date Decided:       May 12, 2022