

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00060-CV

**IN THE INTEREST OF A.Q.W.**

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-01663
Honorable Richard Garcia, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena Chapa, Justice

Delivered and Filed:  January 23, 2013

REVERSED AND REMANDED

This is an appeal from the trial court's termination of appellant's parental rights.  *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (P), (2) (West Supp. 2012).  Because we conclude the evidence is insufficient to support the statutory grounds for termination, we reverse and remand for further proceedings.

### DISCUSSION

In addition to a finding that termination was in the child's best interest, the trial court terminated appellant's parental rights to his son, A.Q.W. on two statutory grounds: (1) constructive abandonment, pursuant to section 161.001(1)(N) of the Texas Family Code and (2) use of a controlled substance, pursuant to section 161.001(1)(P) of the Texas Family Code.

Among appellant's issues on appeal is a challenge to the legal and factual sufficiency of the evidence in support of the trial court's findings.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This standard retains the deference a reviewing court must have for the factfinder's role. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

When reviewing the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a belief or conviction that there existed grounds for termination under section 161.001(1) and that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d at 266. We examine all the evidence in the light most favorable to the findings, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* We must also disregard all evidence the factfinder could have reasonably believed or found to be incredible. *Id.* However, we must not disregard all the evidence that does not support the finding, as doing so could "skew the analysis of whether there is clear and convincing evidence." *Id.*

When conducting a factual sufficiency review of the evidence in a termination of parental rights case, we examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the two prongs of

section 161.001 were met. *Id.* If the evidence that could not be credited in favor of the finding is so great that it would prevent a reasonable factfinder from forming a firm belief or conviction that the two prongs under section 161.001 were met, then the evidence is factually insufficient and the termination will be reversed. *Id.* Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination if there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## A.      Constructive Abandonment

A court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
> (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment . . . .

TEX. FAM. CODE § 161.001(1)(N).

On appeal, appellant challenges the sufficiency of the evidence only with respect to whether the Texas Department of Family and Protective Services ("the Department") made reasonable efforts to return the child to him or his family. The State asserts its duty to satisfy this requirement was met by the creation of a family service plan. A family service plan is designed to reunify a parent with a child who has been removed by the Department. *Liu v. Tex. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Implementation of a family service plan by the Department is ordinarily considered a reasonable effort to return a child to its parent. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—

Amarillo 2011, no pet.) (noting only that "there was evidence of service plans"); *In the Int. of M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (noting that five service plans had been prepared for father; State made special arrangements for father to have parenting classes in nearby town; and a CPS worker came out to father's home and drove him to his psychological assessment). However, the requirement that the Department has made reasonable efforts to return the child to the parent may be inapplicable when the parent is incarcerated. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied) (holding second prong inapplicable because mother was incarcerated).

In this case, the evidence shows the following timeline, during the entirety of which appellant was incarcerated on a burglary charge. A.Q.W. was born on June 21, 2011, with opiates in his system. On June 29, 2011, the Department was granted *ex parte* temporary managing conservatorship of A.Q.W. The Department's petition identified A.Q.W.'s mother's husband as the father and appellant as the "alleged" father. Appellant was considered the child's "alleged" father because he was not named on the birth certificate and the child's mother was married to another man. A family service plan for appellant was filed on August 12, 2011. The child was released from the hospital on September 4, 2011. On October 11, 2011, the trial court ordered DNA testing to determine parentage. On December 2, 2011, Jocelyn Vega, the Department's caseworker, visited appellant in jail for the first and only time and explained the service plan to him. The DNA testing was performed on November 17, 2011, and completed and filed on December 6, 2011, showing appellant to be A.Q.W.'s father. The termination hearing commenced on January 6, 2012, approximately thirty-four days after appellant received the family service plan, one month after he was determined to be A.Q.W.'s father, and during which time he was incarcerated.

At the January 6 termination hearing, the trial court considered the Department's petition to terminate the parental rights of both appellant and A.Q.W.'s mother. Appellant's attorney was not present when trial commenced, and did not appear until some point during Vega's testimony.[1] Vega said she had earlier mailed the service plan to appellant, but it was returned to her. Vega testified that when she visited with appellant in jail on December 2, 2011, she explained the service plan and he stated he understood. Appellant also told Vega his criminal case was pending sentencing to occur on January 4, 2012. At the January 4 sentencing hearing, appellant was given eight years' probation, with six months of drug treatment in a facility outside Houston, Texas.

Vega did not know when appellant first became aware of a pregnancy, although she assumed it was while he was incarcerated. She did not know whether a statement by anyone, including appellant, acknowledging that he was the child's father had been filed, but she did know DNA tests revealed appellant to be the father. Vega said appellant has had no contact with A.Q.W. because appellant has been incarcerated during the pendency of the case. When asked if appellant had demonstrated he was willing or able to care for the child, Vega responded, "No." Vega also answered "no" when asked if appellant had made any efforts to support A.Q.W. Other than her December 2 visit with appellant to explain the service plan to him, the record does not indicate any other contact between appellant and Vega or anyone else with the Department. When asked by appellant's attorney whether the Department was giving appellant only thirty-four days to complete his service plan, Vega responded affirmatively. Counsel then asked Vega if the Department was still willing to go forward and not give appellant a chance to work any services, and Vega responded, "In order for [A.Q.W.] to seek permanency, yes, I believe that we

---

[1] When counsel arrived, he announced not ready because appellant was not present and appellant had not had adequate time to work on his service plan. The trial court denied the announcement.

would need to move forward." Without any elaboration, Vega said she would not be comfortable handing the child over to either parent.

Vega said that if both parent's parental rights were terminated, the Department would first try to have A.Q.W. adopted by his paternal grandmother, appellant's mother, Dolores R. She said Dolores had come forward at the beginning of the case, but Vega told her to wait until after the DNA results were returned. After the DNA results showed appellant was the father, Vega made two December 2011 appointments with Dolores for a preliminary home study. The first appointment was cancelled because Dolores was ill and the second was cancelled because Dolores wanted to wait until after appellant's sentencing in his criminal case, which was just two days before the termination hearing.

A.Q.W.'s court-appointed advocate testified A.Q.W. was doing very well. She said she has had no contact with appellant and she did not have enough information to opine on whether A.Q.W. should be placed with Dolores.

Dolores testified she first became aware appellant was the child's father about thirty days before the termination hearing when appellant told her. She said appellant wants to be a father to A.Q.W., and both she and appellant want A.Q.W. placed with her if appellant's parental rights were terminated. She said appellant was upset when he thought he might lose his parental rights if he was sent to prison. She said her son is not a "bad person." She did not agree his parental rights should be terminated because he has not had a chance to be a father, she thought he would be a very good father, and "[h]e wants this child."

Appellant's family service plan requires, among other things, that appellant submit to random drug tests, complete a parenting class, complete individual counseling with a CPS-approved therapist, maintain contact with Vega at least twice a month, engage in a psycho-social

evaluation through the McCullough Center located in San Antonio, attend weekly NA/AA meetings, obtain and maintain employment and stable and appropriate housing, and complete a Midcoast drug assessment. Implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 310-11 (Tex. App.—El Paso 2009, pet. denied) (holding "preparation and administration" of service plan showed that "Department made reasonable efforts" at reunification); *In the Int. of M.R.J.M.*, 280 S.W.3d at 505 (holding same); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.) (holding that Department's preparation of several service plans designed to help a parent regain custody of her child and parent's failure to complete requirements of the service plans constituted "reasonable efforts" on the State's part to return the child to the mother under the first element of section 161.001(1)(N)). Here, appellant was not confirmed as A.Q.W.'s father until approximately thirty-six days before the termination hearing, and he did not receive his service plan until thirty-four days before the hearing. During this entire time he was incarcerated. The record contains no evidence that appellant was provided with a reasonable opportunity to enroll in, much less complete, any of the requirements that he could have complied with while incarcerated. On this scant record, we must conclude the evidence is legally insufficient to support a finding that the Department made a reasonable effort to return A.Q.W. to his father. *See In re D.T.*, 34 S.W.3d at 633 (if no evidence of one or more elements of subsection (N), then finding of constructive abandonment fails).

**B.      Use of Controlled Substance**

A trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
> (i) failed to complete a court-ordered substance abuse treatment program; or
> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance . . . .

TEX. FAM. CODE § 161.001(1)(P).

Dolores testified appellant is not a consistent drug user, but she admitted he has a history of drug use over the last three or four years and it was "a disease."  She testified appellant's incarceration has given him time to "clean out his system, to get his head straight."  No other evidence was adduced regarding appellant's drug use.  Because appellant was incarcerated the six and one-half months from the time of A.Q.W.'s birth to the time of the termination hearing, he could not have "used a controlled substance . . . in a manner that endangered the health or safety of the child."[2]  And, as we have stated above, having received his service plan only thirty-fours days before the termination hearing, there is no evidence appellant was provided with an opportunity to enroll in, much less complete, "a court-ordered substance abuse treatment program" while incarcerated.  Finally, there is no evidence he has "continued to abuse a controlled substance."

On appeal, the State argues appellant's drug use is a "course of conduct" that has endangered A.Q.W.'s health and safety.  The State speculates this "course of conduct" subjects a child to being left alone because his parent is once again jailed or once again committed to a drug

---

[2] Vega testified A.Q.W.'s mother admitted to the use of cocaine and opiates, although A.Q.W.'s system showed only the presence of opiates.  Vega also said she had continuing concerns about the mother's drug use, and the mother admitted to a relapse as recently as the December 14, 2011 permanency hearing.  No evidence was adduced that appellant used drugs or alcohol with the mother during her pregnancy.

treatment facility. But nothing in the record supports this speculation. There is no evidence appellant has been jailed repeatedly or been in and out of drug treatment of any type. *See In re C.R.*, 263 S.W.3d 368, 372 (Tex. App.—Dallas 2008, no pet.) (use of illegal drugs by a parent may be considered endangering conduct under subsection (E) of section 161.001(1)); *In the Int. of S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (noting parents' criminal history, that both parents had been jailed at various times, and parents' separation from their children). Therefore, we conclude the evidence is legally insufficient to support a finding under section 161.001(1)(P).

## CONCLUSION

We conclude the evidence is legally insufficient to support a finding under the two statutory grounds on which appellant's parental rights were terminated. Therefore, we do not address whether the evidence supports a best interest of the child finding or appellant's final issue in which he asserts his trial counsel was ineffective because counsel arrived late for the hearing and did not request appellant's presence at the hearing. For the reasons stated above, we reverse the trial court's Order of Termination as to appellant and remand for further proceedings.

Sandee Bryan Marion, Justice