

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00710-CV

**IN THE INTEREST OF G.A.M.**, M.A.S.B. & G.E.E., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA02590
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed: February 12, 2020

AFFIRMED

Appellants Peggy, mother of G.A.M., M.A.S.B., and G.E.E., and Gerrod, father of G.E.E.,
appeal from the trial court's order terminating their parental rights to their respective children. In
a single issue, Peggy challenges the trial court's finding that termination is in the children's best
interest. In three issues, Gerrod challenges the sufficiency of the evidence supporting the trial
court's predicate statutory and best interest findings, as well as the trial court's conservatorship
determination. We affirm the trial court's termination order.

## Background

The Texas Department of Family and Protective Services ("the Department") removed the
children in November 2017 after Peggy physically assaulted then thirteen-year-old M.A.S.B.
Peggy, who at the time was on probation for assault of a security officer, was charged with injury

to a child. Peggy pleaded "no contest" and was sentenced in April 2018 to incarceration for six years. Testifying by telephone from prison, Peggy stated: "I wasn't planning to get in a fight with [M.A.S.B.], but she hit me. My little 200-pound little girl. . . . If somebody with 200 pounds hits you, you are going to hit them back. You are not just going to stand there and take punch for punch." At the time the children were removed, G.A.M. was fifteen and not living with Peggy, and G.E.E. was a toddler.

At an initial court hearing, Peggy stated she wanted to relinquish her parental rights to her two older daughters, G.A.M. and M.A.S.B. Later, at trial, Peggy testified: "[I]f my daughter doesn't want to be in my care, that's fine. You know, they are old enough to make their own choices." At the time of trial G.A.M. (then seventeen) and M.A.S.B. (then fifteen) were placed in group homes. G.A.M. is "having a bit of a rough time adjusting and following some of the rules" and is eager to age out of Department custody. Department caseworkers described M.A.S.B. as a "good kid" who is college-bound and generally doing well in her current placement. Both G.A.M. and M.A.S.B. do not want to be reunited with Peggy.

G.E.E., who was almost five years old at the time of trial, is placed with a foster family that plans to adopt him. The One Hope case manager for G.E.E. and his foster family testified G.E.E. is thriving and has a bond and rapport with his foster parents, who are meeting his physical and emotional needs. G.E.E.'s foster parents take him to the park, have him enrolled in soccer, go to the library weekly, go to the movies, and do many activities together as a family. The foster parents also enrolled G.E.E. in play therapy and take him to see a psychiatrist for ADHD. G.E.E. is so bonded with his foster family that he asked to have his hair cut like his foster father's and asked to use pictures of his foster family, rather than his biological family, for his school family tree project. The foster parents encourage and facilitate G.E.E.'s relationship with M.A.S.B., with whom he is bonded.

The Department caseworker who worked the case from December 2017 to August 2019 testified that due to Peggy's incarceration, Peggy cannot meet her children's physical and emotional needs, has not demonstrated an ability to parent her children, and has not demonstrated an ability to provide a stable and safe home environment. The caseworker testified she believes it would be dangerous to return the children to Peggy because Peggy did not complete her family service plan, the older children do not want to return to Peggy, and Peggy has not demonstrated an ability to change the behavior that caused the children's removal.

At trial, Peggy testified she has no plans to care for G.A.M. or M.A.S.B. Peggy testified her plan for G.E.E. is to care for him once she is released from prison. In the meantime, Peggy wants G.E.E. to be placed with his paternal aunt in Mississippi and is "not really" concerned about G.E.E. being separated from his sisters "because the simple fact that [M.A.S.B.] overreacted and hit her little brother with a fire truck." Although Peggy acknowledged hitting M.A.S.B., she testified: "I never hit [G.E.E.] a day in my life and I never will, because I—I love my son truly too much." Peggy is currently taking a parenting class in prison.

Before G.E.E. was born, Gerrod received a four-year prison sentence for drug possession. Gerrod was serving nine months of that sentence when G.E.E. was born. After being paroled, Gerrod had a relationship with G.E.E. until his parole was revoked. Gerrod served another two and one-half years of his sentence until he was paroled and released to a halfway house in El Paso in June 2019. Testifying by telephone, Gerrod stated he would be released from parole in January 2020. Gerrod testified he completed anger management classes and parenting classes in prison and is currently attending substance abuse classes. Gerrod also testified that while incarcerated, he wrote "at least four or five" letters to G.E.E. and mailed them to the Department caseworker. Regarding his plans for G.E.E., Gerrod wants G.E.E. to be placed with his sister in Mississippi until Gerrod is released from the halfway house. At that point, Gerrod's plan "is to get my son, put

him in school, continue—continue to work at my job and provide for him as I was before my incarceration as a good father."

The Department investigated G.E.E.'s paternal aunt in Mississippi as a potential placement for G.E.E. and determined she was not suitable due to allegations of drug use and past criminal history, including a 2017 allegation that the aunt sexually abused her girlfriend's child. The Department also was concerned that the aunt lived in a two-bedroom apartment with four children, her girlfriend, and her girlfriend's child. The aunt, who had never met or spoken to G.E.E., never contacted the current Department caseworker to request contact or visits with G.E.E. or to ask about G.E.E.'s welfare.

At the conclusion of trial, the trial court granted the Department's petition for termination and terminated Peggy's, Gerrod's, and the other fathers' parental rights to their respective children. Peggy and Gerrod appeal.

**Standard of Review**

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interest of the children. TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review the legal and factual sufficiency of the evidence using well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)). In determining the best interest of a child, we apply the factors set forth in section 263.307 of the Family Code, as well as the non-exhaustive *Holley* factors. *See* TEX. FAM. CODE

ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371–72.

The trial court need not find evidence of each *Holley* factor in order to conclude termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In addition, evidence that a parent has committed one of the acts or omissions listed in subsection 161.001(b)(1) also may be probative of the best interest of the child. *Id.* at 28.

### Peggy

In a single issue, Peggy argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest.

G.A.M. and M.A.S.B. have stated they do not want to be reunited with Peggy, and Peggy testified that was "fine" because G.A.M. and M.A.S.B. are old enough to make their own decisions. Although G.E.E. is too young to express his desires, the Department caseworkers and the One Hope case manager testified G.E.E. is thriving in his current placement and is very bonded with his foster family.

All three children's current placements are meeting their present emotional and physical needs. The Department caseworkers testified the Department is committed to providing resources to G.A.M. and M.A.S.B. to help them be successful until and after they turn eighteen. The One Hope case manager testified G.E.E.'s foster parents have demonstrated an ability to meet his future

emotional and physical needs and plan to adopt him. Peggy testified she wants G.E.E. temporarily placed with a paternal relative he has never met and who the Department determined was unsuitable. Although G.E.E. is very closely bonded with M.A.S.B., Peggy was unconcerned that placing G.E.E. in Mississippi would severely curtail his relationship with his sister.

Peggy is currently unable to meet her children's emotional or physical needs due to being incarcerated for physically assaulting M.A.S.B. In her testimony at trial, Peggy blamed the altercation that resulted in the children's removal on M.A.S.B. rather than take responsibility for her own conduct. Although Peggy testified she was taking parenting classes in prison, she did not complete her family service plan.

After considering all of the trial evidence in light of the statutory and *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding as it pertains to Peggy. Peggy's sole issue is overruled.

**Gerrod**

In his first and second issues, Gerrod argues the evidence is legally and factually insufficient to support the trial court's predicate statutory and best interest findings. In his third issue, Gerrod argues that because the evidence does not support termination, this court should reverse the trial court's conservatorship determination.

Where the trial court terminates a parent's rights on multiple statutory grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362. Here, the trial court found Gerrod: (1) constructively abandoned G.E.E., and (2) failed to comply with the provisions of a family service plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). To terminate the parent-child relationship on ground (N), the trial court must find by clear and convincing evidence that the parent has:

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than six months, and:

(i) [the Department] has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment.

*Id.* § 161.001(1)(b)(N). A parent's incarceration, standing alone, is not constructive abandonment. *See In re A.T.L.*, No. 04-15-00379-CV, 2015 WL 6507807, at \*4 (Tex. App.—San Antonio Oct. 28, 2015, pet. denied) (mem. op.).

Here, Gerrod argues the evidence is insufficient to establish the first two prongs of ground (N) because the Department failed to make reasonable efforts to return G.E.E. to Gerrod and because Gerrod maintained significant contact with G.E.E. The requirement that the Department make reasonable efforts to return the child to the parent may be inapplicable when the parent is incarcerated. *Id.* (citing *In re A.Q.W.*, 395 S.W.3d 285, 288 (Tex. App.—San Antonio 2013, no pet.)). But to the extent it is applicable, we have held the Department may establish reasonable efforts to return the child by making efforts, even if futile, to place the child with a friend or relative willing to take custody of the child on behalf of the incarcerated parent. *Id.* at \*5; *In re R.G.*, No. 04-14-00689-CV, 2015 WL 1137679, at \*2–3 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.) (holding Department presented sufficient evidence of its efforts to place the child with a relative even though no acceptable person was available). In this case, the Department met its burden by presenting evidence that it considered Gerrod's sister in Mississippi as a placement for G.E.E. but determined she was unsuitable due to allegations of drug use and past criminal history, unsuitable living conditions, and a lack of expressed interest in G.E.E.'s welfare.

Regarding the second prong of ground (N), this court has recognized it is not impossible for an incarcerated parent to maintain significant contact with a child, at the very least, through written correspondence. *See In re R.G.*, 2015 WL 113769, at *3. Gerrod was incarcerated when G.E.E. was born and when G.E.E. was removed from Peggy's custody. The evidence is undisputed that Gerrod had a relationship with G.E.E. after he was born but had not seen G.E.E. in the three years prior to trial. Gerrod testified he sent G.E.E. "at least four or five" letters via the Department caseworker. As the judge of Gerrod's credibility, however, the trial court could have disbelieved Gerrod's testimony and concluded he did not "maintain significant contact" with G.E.E. while in prison. *See id.* ("[A]s the judge of Mother's credibility, the trial court could have determined Mother did not attempt to contact either the caseworker or the ad litem—despite her claims."). Accordingly, because we cannot conclude the evidence is insufficient to support termination on ground (N), we overrule Gerrod's first issue.

Gerrod also argues the evidence is insufficient to support the trial court's best interest finding. As noted above, although G.E.E. is too young to express his desires, the evidence establishes G.E.E. is thriving in his current placement and is very bonded with his foster parents, who plan to adopt him. G.E.E.'s foster parents are meeting his present emotional and physical needs and have demonstrated an ability to meet his future emotional and physical needs as well. In contrast, at the time of trial, Gerrod was living in a halfway house where he acknowledged G.E.E. could not live. Gerrod testified he wants G.E.E. temporarily placed with a relative G.E.E. has never met and who the Department determined was unsuitable. Therefore, after considering all of the trial evidence in light of the statutory and *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding as it pertains to Gerrod. Gerrod's second issue is overruled.

Having overruled Gerrod's first and second issues, we conclude there is no basis to sustain Gerrod's third issue regarding the trial court's conservatorship determination. Accordingly, Gerrod's third issue is overruled.

## Conclusion

Having overruled both appellants' issues, we affirm the trial court's order of termination.

Sandee Bryan Marion, Chief Justice