

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-22-00787-CV

**IN THE INTEREST OF Z.R.M.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-01812
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 15, 2023

AFFIRMED

Appellant F.E.C. appeals the trial court's order terminating her parental rights to her child, Z.R.M. (born 2021).[1] F.E.C. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in Z.R.M.'s best interest. We affirm the trial court's order.

### BACKGROUND

In October of 2021, the Texas Department of Family and Protective Services removed Z.R.M. from F.E.C.'s care because both F.E.C. and Z.R.M. tested positive for drugs when Z.R.M. was born. The Department obtained temporary managing conservatorship over Z.R.M., placed her with paternal relatives, and filed a petition to terminate the parental rights of both F.E.C. and

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and her biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

Z.R.M.'s father, J.E.M. The Department also created a family service plan requiring F.E.C. to, inter alia, complete parenting and domestic violence classes, submit to random drug testing, and test negative on all drug tests as a condition of reunification. The Department ultimately pursued termination of F.E.C.'s parental rights.

Eleven months after removal, the trial court held a two-day bench trial that began on September 21, 2022 and concluded on October 31, 2022. F.E.C. appeared on the first day of trial, but not the second. The trial court heard testimony from one witness—the Department caseworker assigned to this case—and it admitted four documents into evidence. On November 3, 2022, the trial court signed an order terminating F.E.C.'s parental rights pursuant to section 161.001(b)(1)(O) and (P) and its finding that termination of F.E.C.'s parental rights was in Z.R.M.'s best interest. F.E.C. timely appealed.[2]

## ANALYSIS

F.E.C. challenges the legal and factual sufficiency of the trial court's finding that termination is in Z.R.M.'s best interest. Because she does not challenge the trial court's findings under sections (O) and (P), we must accept the validity of those findings. *See In re A.V.*, 113 S.W.3d 355, 361–62 (Tex. 2003); *In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (P).

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d at 683 (internal quotation marks omitted). "As a result, appellate courts

---

[2] The trial court also terminated J.E.M.'s parental rights. He is not a party to this appeal.

must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate F.E.C.'s parental rights and that termination was in the best interest of Z.R.M. TEX. FAM. CODE ANN. §§ 161.001, 161.206; *In re A.V.*, 113 S.W.3d at 362. "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider both the evidence that supports the challenged finding and the evidence that is contrary to the finding. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this

burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

## *Application*

As noted above, in support of its petition to permanently sever the relationship between F.E.C. and her child, the Department presented four documents[5] and the testimony of a single witness. The trial court did not hear any other evidence, and the record of the trial proceedings contains only twenty-seven pages of testimony to terminate the rights of both parents.[6]

---

[5] The exhibits admitted into evidence were: (1) a screenshot of a "Birth Requested Registrant Information" web search that identifies F.E.C. and J.E.M. as Z.R.M.'s mother and father; (2) a letter from the Texas Department of Health and Human Services showing that Z.R.M. "has not been the subject of a suit affecting the parent-child relationship in which a judgment was entered on or after January 1, 1974"; (3) F.E.C.'s service plan; and (4) J.E.M.'s service plan. The trial court also took judicial notice of a December 13, 2021 order making the parents' service plans an order of the court.

[6] Because "[d]ue process requires meaningful appellate review of orders terminating parental rights," this court has repeatedly expressed concerns about underdeveloped records in parental termination appeals. *See In re G.M.*, No. 04-19-00080-CV, 2019 WL 3432088, at *4 (Tex. App.—San Antonio July 31, 2019, pet. denied) (mem. op) (Watkins, J., concurring); *see also, e.g.*, *In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at *9 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.) ("The record evidence falls short of the requisite legal standard and fails to support termination of Mother's parental rights."); *In re M.A.D.V.*, No. 04-22-00131-CV, 2022 WL 3372416, at *10–12 (Tex. App.—San Antonio Aug. 17, 2022, no pet.) (mem. op.) (reversing termination order and rending judgment denying Department's petition for termination of father's rights on sufficiency grounds); *In re J.R.M.*, 647 S.W.3d 461, 469 (Tex. App.—San Antonio 2022, no pet.) (Rodriguez, J., dissenting) ("Because the long-term effects on a child whose relationship is forever and irrevocably severed from their parent are at stake, I urge the trial court and the parties to more completely develop the trial evidence in the future so that the depth of the appellate record is commensurate with the finality and gravity of parental termination."); *In re E.F.*, 591 S.W.3d 138, 150 (Tex. App.—San Antonio 2019, no pet.) (Chapa, J., dissenting) ("Looming deadlines and overcrowded dockets cannot justify shortcuts that undermine the truth-seeking function of our courts."); *In re K.M.J.*, Nos. 04-18-00727-CV & 04-18-00728-CV, 2019 WL 1459565, at *1 (Tex. App.—San Antonio Apr. 3, 2019, pet. denied) (mem. op.) ("[W]e cannot say that the 'degree of proof' rose to the level of 'clear and convincing' as required to support the best interest findings."); *In re M.A.S.L.*, No. 04-18-00496-CV, 2018 WL 6624405, at *5 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op.) (reversing termination order supported by legally and factually insufficient evidence where caseworker had no contact with father, did not meet with father to discuss family service plan, and had "no idea" whether he completed services); *In re R.M.P.*, No. 04-17-00666-CV, 2018 WL 2976451, at *12 (Tex. App.—San Antonio June 13, 2018, pet. denied) (mem. op.) (Martinez, J., dissenting) ("'The law sets a high evidentiary bar for termination of parental rights. We do not alleviate the plight of Texas foster children by lowering that bar and perpetuating diminished judicial expectations of the proof that must be presented by the Department.'") (quoting *In re B.D.A.*, 546 S.W.3d 346, 392 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Massengale, J., dissenting on reh'g)); *In re J.A.J.*, No. 04-14-00684-CV, 2014 WL 7444340, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) (mem. op.) ("[W]e may exercise our broad discretion to remand for a new trial in the interest of justice when there is a probability that a case has not been fully developed for any reason."); *In re D.M.*, 452 S.W.3d 462, 475 (Tex. App.—San Antonio 2014, no pet.) (Martinez, J., dissenting) ("We are duty bound to carefully scrutinize termination proceedings and must strictly construe involuntary termination statutes in favor of the parent."); *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.) (finding the evidence legally insufficient to support the termination order but remanding the cause for a new trial in the interest of justice under TEX. R. APP. P. 43.3(b)); *In re A.Q.W.*, 395 S.W.3d 285, 290–91 (Tex. App.—San Antonio 2013, no

The Department's caseworker testified that F.E.C. completed several tasks required by her service plan, including psychological and psychiatric assessments, individual counseling, and a drug treatment program. The Department also presented evidence, however, that F.E.C.'s service plan required her to engage in parenting and domestic violence classes and that F.E.C. failed to do so. The trial court concluded that F.E.C.'s failure to complete her service plan supported a finding that termination was warranted under section 161.001(b)(1)(O). As noted above, because F.E.C. has not challenged that finding, we must accept its validity. *See In re A.V.*, 113 S.W.3d at 361–62.

A trial court may consider a parent's failure to complete a court-ordered service plan in determining a child's best interest. *See In re S.R.*, 452 S.W.3d 351, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Here, however, F.E.C.'s failure to participate in a domestic violence class does little to support the trial court's best interest finding. *See In re D.B.T.*, No. 04-14-00919-CV, 2015 WL 1939072, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). The only evidence the Department presented to support the service plan's requirement for F.E.C. to complete a domestic violence class comes from the service plan itself, which indicates that when it was created in November of 2021, F.E.C. reported she had been a victim of domestic violence "in her previous relationship[.]" The Department did not present any further evidence regarding F.E.C.'s history of domestic violence. The Department did not, for example, present any evidence about when F.E.C. last experienced domestic violence, when the "previous relationship" ended, whether F.E.C. experienced domestic violence during her pregnancy with Z.R.M., whether the violence F.E.C. reported involved either J.E.M. or a current member of F.E.C.'s family or household, or how the domestic violence F.E.C. experienced in her "previous relationship" would

---

pet.), *overruled on other grounds by In re J.M.T.*, 617 S.W.3d 604, 610–11 (Tex. App.—San Antonio 2020, pet. denied) (en banc) (finding the evidence legally insufficient because the record did not support the State's argument that father had been jailed repeatedly or been in and out of drug treatment). Notably, all these cases were tried in Bexar County.

be expected to affect Z.R.M. if the parental relationship was not terminated.[7] The service plan's notation that F.E.C. experienced domestic violence at some undefined point in the past limits the relevance of F.E.C.'s failure to participate in a domestic violence class during the pendency of this case. *Cf. id.* ("While a ground for termination might also be probative of a child's best interest, it is not in this case.").

While the record contains little to show why the service plan required F.E.C. to complete a domestic violence class, the requirement that she complete a parenting class appears to spring from the fact that the Department removed Z.R.M. because she tested positive for drugs at birth. *See, e.g.*, *In re J.R.W.*, No. 01-14-00442-CV, 2014 WL 6792036, at *6 (Tex. App.—Houston [1st Dist.] Nov. 26, 2014, no pet.) (mem. op.) (concluding mother's drug use during pregnancy was evidence of abuse or neglect). The Department did not, however, present any evidence regarding the topics the parenting class would have covered, the skills F.E.C. would have learned by completing such a class, or how Z.R.M. would have benefited from F.E.C.'s completion of the class. It may be that everyone involved in this trial knew the answers to these questions, but since those answers are not included in our appellate record, we do not. Nevertheless, we reluctantly conclude the standard of review requires us to hold that the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find that Z.R.M.'s best interest would have been served if F.E.C. had completed a parenting class. *See* TEX. FAM. CODE § 263.307(b)(10), (11) (trial court may consider parent's "willingness and ability" to complete counseling services and effect positive changes); *In re D.B.T.*, 2015 WL 1939072, at *4 (noting parent's "failure to complete [a parenting] course might be significantly probative of a child's best interest" if the

---

[7] J.E.M.'s service plan does not mention a history of domestic violence, and the Department did not require J.E.M. to participate in domestic violence classes.

evidence shows the child was "removed from the parent because of that parent's abuse or neglect") (emphasis omitted).

We also conclude that the Department's evidence of F.E.C.'s drug use supports the best interest finding. *See* TEX. FAM. CODE § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. A parent's use of illegal drugs can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio August 21, 2019, pet. denied) (mem. op.). "Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.). Here, the evidence shows that F.E.C. successfully completed the drug treatment program required by her service plan. The caseworker testified, however, that F.E.C. tested positive for and admitted using methamphetamine after she completed the program. The caseworker also testified that after the post-treatment positive test, F.E.C. stated "that she would engage in [further] treatment only if she can get [Z.R.M.] back." *See* TEX. FAM. CODE § 263.307(b)(10), (11). Finally, the caseworker testified that between the first day of trial in September of 2022 and the second day of trial in October of 2022, she asked F.E.C. to submit to a drug test and F.E.C. did not respond to that request. The trial court could have rationally inferred that F.E.C. avoided testing because she was still using illegal drugs. *See, e.g.*, *In re D.E.M.*, No. 04-17-00757-CV, 2018 WL 1831622, at *3 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.). Based on this evidence, a reasonable factfinder could have concluded that the Department's evidence of F.E.C.'s failure to resolve her drug use was probative of Z.R.M.'s best interest. *See In re K.J.G.*, 2019 WL 3937278, at *8; *In re D.M.M.*, 2017 WL 61847, at *5.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of F.E.C.'s parental rights was in Z.R.M.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule F.E.C.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice