**Affirmed and Memorandum Opinion filed December 6, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-24-00419-CV

## IN THE INTEREST OF D.B.J. AKA D.J., A CHILD

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2023-01089J**

## MEMORANDUM OPINION

Appellant B.N.J. ("Mother") appeals the termination of her parental rights to her child D.B.J. a/k/a D.J. ("D.J."). In two issues, Mother argues the evidence is legally and factually insufficient to support termination of her parental rights under Texas Family Code § 161.001(b)(1)(N) and (O). We affirm.

## I.  BACKGROUND

On May 3, 2023, Mother gave birth to D.J. while she was incarcerated awaiting trial on a charge for injury with intent to inflict bodily harm to one of her other children. On May 9, 2023, the Department of Family and Protective Services

("the Department") filed a petition seeking to terminate Mother's parental rights and to be appointed managing conservator of D.J. The trial court granted the Department's request for emergency temporary conservatorship the same day. In its live pleading, the Department alleged that termination of Mother's parental rights to D.J. was proper pursuant to Family Code § 161.001(b)(1)(D), (E), (K), (L), (N), and (O).

Mother pleaded guilty to the pending charge and was released in December of 2023. The Department's amended petition was tried to the bench on April 30, 2024. The trial court heard testimony from the Department's caseworker, Jackie Mendez ("Mendez"); Mother; and D.J.'s foster parents. The trial court also admitted multiple exhibits into evidence, including Mother's family service plan and the permanency reports to the court during the history of the case.

The trial court found that termination was proper under § 161.001(b)(1)(N) and (O) and in D.J.'s best interest and terminated Mother's parental rights.[1] This appeal followed.

## II. DISCUSSION

In two issues, Mother argues the evidence was legally and factually insufficient to support termination under both statutory grounds found by the trial court: subsections (N) and (O).

### A. APPLICABLE LAW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to

---

[1] The trial court also terminated D.J.'s father's parental rights. Father is not a party to this appeal.

inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). "'Clear and convincing evidence' means a 'measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting Tex. Fam. Code Ann. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

The trial court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described by Family Code § 161.001(b)(1) and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *In re N.G.*, 577 S.W.3d at 232. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d at 232; *see* Tex. Fam. Code Ann. § 161.001(b). However, we

must always review any sufficiency challenge to a termination on appeal under subsection (D) and (E). *See In re N.G.*, 577 S.W.3d at 235 ("When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").

As relevant to this case, the Department alleged that termination of Mother's parental rights was proper because Mother:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
>> (i) the department has made reasonable efforts to return the child to the parent;
>>
>> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>>
>> (iii) the parent has demonstrated an inability to provide the child with a safe environment . . . .

Tex. Fam. Code Ann. § 161.001(b)(1)(N).

## B. STANDARD OF REVIEW

In a legal sufficiency review, a court should view the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found

to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.*

If, after conducting its legal-sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 266–67. In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable fact-finder could not have resolved it in favor of the finding. *In re A.C.*, 560 S.W.3d at 631. Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

## C.   ANALYSIS

Mother challenges the termination of her parental rights under subsection (N), arguing the evidence is legally and factually insufficient that (1) the Department made reasonable efforts to return D.J. to her, (2) that she did not regularly visit or make significant contact with D.J., and (3) that she demonstrated an inability to provide D.J. with a safe environment.

### 1. Reasonable efforts to return D.J.

On June 6, 2023, the Department created a family service plan for Mother. It states that the permanency goal for D.J. is "Alt Family: Unrelated, Adoption" and the concurrent permanency goal as "Alt Family: Relative/Fictive Kin,

Adoption." Mother argues the evidence is insufficient because the family service plan states from the outset that the Department's goal was adoption and thus contrary to a goal of reuniting D.J. with Mother.

Contrary to Mother's argument, this evidence is not conclusive in light of other evidence in the record. *See In re F.E.N.*, 542 S.W.3d 752, 766 (Tex. App.— Houston [14th Dist.] 2018, pet. denied) ("While implementation of a family service plan by the Department is generally considered a reasonable effort to return a child to a parent, that is not the only evidence that can satisfy this element."). Mother's family service plan also states that Mother hopes to be reunified with D.J. and that the Department's goal is for D.J. to have a stable and safe environment that will meet D.J.'s basic needs, given Mother's history of drug use, a drug overdose, mental instability, accusations of family violence against one of her children, and being a prior victim of family violence herself. *See In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Generally, an implementation of a family service plan by the Department is considered a reasonable effort to return a child to the parent."). We also look to the Department's other actions in attempting to return the child. *See In re F.E.N.*, 542 S.W.3d at 766.

The family service plan states "[t]he goal of the Department is to establish permanency for [D.J.] within the next twelve months by offering the parent services and resources to alleviate the concerns of Neglectful Supervision to ensure [D.J.'s] safety and well-being." Mendez testified that the Department attempted to place D.J. with a friend of Mother's, but that the individual could not take care of a baby in addition to two other of Mother's children already in the individual's care. Mendez testified that the Department asked Mother if there was any other placement option for D.J. and Mother answered "No." The Department's

6

permanency report to the court states that the Department "has contacted all known relatives and continues to search for other relatives/fictive kin"; that it "is in contact with a fictive kin relative but have not identified a member that is willing to care for the child"; and that "[s]ince [Mother's] release from Harris County Jail, [the Department] has made reasonable efforts to provide [Mother] with service referrals and visitation."

We conclude that there is legally sufficient evidence supporting the trial court's implicit finding that the Department made reasonable efforts to return D.J. to Mother. *See In re J.F.C.*, 96 S.W.3d at 266–67.

Mother emphasizes that she was given a short period to comply with the family service plan between the time she was released from jail and the final hearing on the Department's petition—approximately four months—because Mendez testified that it would take six to twelve months for Mother to be discharged from substance abuse therapy sessions. Thus, Mother argues, the Department's efforts were unreasonable. Contrary to Mother's argument, her service plan did not require her to be discharged from substance abuse therapy sessions before the final hearing; instead, Mother was required to complete a drug and alcohol assessment and follow the recommendations. Furthermore, Mendez testified that Mother had completed the drug and alcohol assessment and was participating in substance abuse therapy.

Mother's service plan also required her to: find a stable job and stable housing through the help of the Texas Workforce Commission; attend, participate in, and complete parenting classes for eight weeks; participate in a domestic violence assessment and follow all recommendations; participate fully in a psychiatric evaluation after the provider contacted Mother and follow all recommendations. Mother argues that the Department gave her the information for

7

the domestic violence assessment on March 21, 2024, which was forty days before the final hearing. However, the service plan required Mother to participate in the assessment, and the permanency report states that Mother told the caseworker on April 4 that Mother had submitted the paperwork to get started.

Mendez also testified that many of the services required of Mother were available virtually and had been offered to Mother, that Mother had failed to return numerous calls to her concerning the services, and that Mother had "not made herself available to participate in services even though they had been offered virtually to her." *See In re A.Q.W.*, 395 S.W.3d 285, 289 (Tex. App.—San Antonio 2013, no pet.) ("Implementation of a family service plan by the Department is considered a reasonable effort to return the child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan."). And as noted, the Department also tried to place the child with family members and friends.

In light of the entire record, we conclude that there is factually sufficient evidence that the Department made a reasonable effort to return D.J. to Mother. *See, e.g.*, *A.D. v. Tex. Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 714 (Tex. App.—Austin 2023, no pet.) (concluding evidence was factually sufficient when "the Department developed a service plan for Mother," "made attempts to place [the child] with a family member before placing him in foster care when no other viable family options were available," and "Mother stopped communicating with the Department, stopped attending visits with Michael, and failed to comply with the terms of the service plan, the Department caseworker repeatedly tried to reach Mother by going to her home, calling her, emailing her, texting her, and calling her attorney").

## 2. Mother's failure to regularly visit or make significant contact

As to the trial court's implicit finding that Mother did not regularly visit or make significant contact with D.J., Mendez testified that the Department scheduled nine visits for Mother during the four months following Mother's release from jail and that Mother had attended only two of the visits. Mother testified she lacked transportation. Mendez testified that the Department cancelled one of the visits because of an emergency and that the other six were cancelled due to Mother "not communicating and attending the visits." Mendez testified that Mother brought D.J. some gifts during her last visit, and Foster Mother testified that Mother had no contact with D.J. apart from those two visits.

Mother's two visitations with D.J., an infant baby, during a four-month period in which she was given the opportunity to visit D.J. an additional six times supports the trial court's implicit finding that Mother failed to regularly visit D.J. Additionally, Foster Mother's testimony that Mother had no other contact with D.J. apart from those two visits supports the trial court's finding that Mother failed to make significant contact with D.J. Based on this evidence, the disputed evidence a reasonable factfinder could not have credited in favor of the finding is not so significant that the factfinder could not have formed a firm belief or conviction that the finding was true.

We conclude that the evidence is legally and factually sufficient that Mother failed to regularly visit or have significant contact with D.J. *See In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266–67.

## 3. Mother's inability to provide D.J. with a safe environment.

Finally, Mother argues that the Department presented no evidence regarding her inability to provide D.J. with a safe environment. Mother argues that Mendez's

testimony that Mother had not demonstrated an ability to care for D.J. was conclusory and that the evidence in the record of Mother's drug use, mental health, and her history with her other children was insufficient to enable a reasonable factfinder to form a firm belief that Mother failed to provide D.J. with a safe environment. Contrary to Mother's argument, there was additional relevant evidence at trial, and we conclude that the evidence is legally and factually sufficient.

At trial, Mother testified that she is still not yet in a stable environment and that she was living with her boyfriend. Mother stated she had not given the Department her home address was because she did not want to have her boyfriend involved. Mother testified that it would take her six months to a year to be able to provide D.J. with stable housing. And it is undisputed that D.J. had been with the foster parents because the Department had been unable to place D.J. with one of Mother's family members or friends. This evidence supports the trial court's finding that Mother failed to provide D.J. with a safe environment. Viewing this evidence in the light most favorable to the trial court's implicit finding, we conclude that the evidence is legally sufficient that Mother failed to provide D.J. with a safe environment. *See In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266–67. Additionally, Mendez and Mother testified that Mother was unemployed, and Mother stated she had an interview scheduled and was waiting to hear back on other multiple applications she had submitted. Mother's lack of employment and her unwillingness to allow the Department to visit and inspect the place where Mother is living further supports the trial court's finding that Mother failed to provide D.J. with a safe environment. Mendez also testified that Mother had four other children and that none were in Mother's custody. The family service plan, which was admitted into evidence, notes that Mother overdosed on cocaine

and methamphetamine and had been using cocaine on and off for six months before her arrest. Mother also testified that she had not complied with the Department's request for drug testing because she accidentally ate a gummy at a bachelorette party and therefore knew she would fail a drug test.

As to the factual sufficiency of the evidence, the trial court heard testimony and received evidence that Mother lacked transportation and asserted that in essence, her recent release from jail four months prior, combined with her criminal record, impeded her from completing her service plan, and from obtaining employment and a stable and a safe home for D.J. Mother's service plan also noted that Mother had been sober for eight months. However, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is not so significant that the factfinder could not have formed a firm belief or conviction that Mother demonstrated an inability to provide D.J. with a safe environment. Therefore, we conclude that the evidence is also factually sufficient. *See In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266–67; *see also In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.—Fort Worth 2004, no pet.) (concluding that attending only half of her parenting classes, lacking steady housing and employment, and missing the opportunity for counseling and a psychological evaluation demonstrated inability to provide child with a safe environment).

We overrule Mother's first issue.[2]

---

[2] Because we conclude the evidence is sufficient to affirm the termination of Mother's parental rights under subsection (N), and because only one statutory ground is necessary to uphold the termination of her parental rights, we need not address Mother's second issue challenging the legal and factual sufficiency of the evidence supporting termination under subsection (O). *See* Tex. Fam. Code Ann. § 161.001(b); Tex. R. App. P. 47.4; *In re N.G.*, 577 S.W.3d at 232.

### III.  CONCLUSION

We affirm the trial court's order.



/s/      Margaret "Meg" Poissant
         Justice

Panel consists of Justices Spain, Poissant, and Wilson.