

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00568-CV

**IN THE INTEREST OF D.J.R.**, D.J.O. and I.L.A.

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-01589
Honorable Raul Perales, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:      Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice
            Liza A. Rodriguez, Justice

Delivered and Filed: November 29, 2023

AFFIRMED

Jessica R. and Daniel O.[1] appeal the trial court's order terminating their parental rights. We affirm.

### BACKGROUND

On September 10, 2021, the Department of Family and Protective Services ("the Department") filed the underlying suit to terminate Jessica R.'s and Daniel O.'s parental rights, along with an affidavit in support of emergency removal of then six-year-old D.J.R., four-year-old D.J.O., and three-year-old I.L.A. The children were removed and placed under the care of the Department. After a bench trial, the trial court terminated Jessica R.'s parental rights pursuant to

---

[1]To protect the identity of the minor children, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

section 161.001(b)(1)(D), (E), (N), and (O) of the Texas Family Code. The trial court also found that termination of her parental rights was in the best interest of the children. The trial court also terminated Daniel O.'s parental rights pursuant to section 161.001(b)(1)(N) and (O), and found that termination of his parental rights was in the best interest of his son D.J.O.[2] On appeal, Jessica R. argues the evidence is legally and factually insufficient to support the trial court's predicate (D) and (E) findings. Similarly, Daniel O. argues the evidence is legally and factually insufficient to support the trial court's predicate (N) and (O) findings. Both Jessica R. and Daniel O. argue the evidence is legally and factually insufficient to support the trial court's best-interest findings. Finally, Daniel O. argues (1) the trial court abused its discretion in making the Department the permanent managing conservator of his son D.J.O., and (2) he was denied effective assistance of counsel.

**SUFFICIENCY OF THE EVIDENCE**

*A. Standard of Review*

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factually sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If,

---

[2]The fathers of D.J.R. and I.L.A. did not appeal the termination of their parental rights.

in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id.*

### B. Jessica R.

Jessica R.'s parental rights were terminated pursuant to multiple predicate grounds. However, in her brief, Jessica R. challenges only the trial court's findings under subsections (D) and (E); she does not challenge the trial court's findings under subsections (N) and (O). If, as here, the trial court terminates the parent-child relationship on multiple grounds under section 161.001(1), we may affirm on any one ground because, in addition to finding that termination is in the child's best interest, only one predicate violation under section 161.001(1) is necessary to support a termination decree. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.). Thus, because Jessica R. has not challenged the trial court's findings under subsections (N) and (O), the trial court's order terminating her parental rights may be affirmed on those grounds so long as we determine under Jessica R.'s second issue that there is legally and factually sufficient evidence to support the trial court's best-interest finding.

However, even though the trial court's unchallenged findings under subsections (N) and (O) may support its termination order, we must still consider Jessica R.'s issues relating to the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E). Because termination findings under subsections (D) and (E) may serve as the basis for a future termination of parental rights proceeding, the supreme court has explained that due process

requires that we address any appellate issue regarding the sufficiency of the evidence of a trial court's finding under either (D) or (E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

### 1. *Subsection (D) Predicate Ground*

Subsection (D) allows termination of parental rights if, along with a best-interest finding, the factfinder finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "Endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *Id.* at *3 (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). "[A] parent need not know for certain that the child is in an endangering environment, awareness of such a potential is sufficient." *Id.* at *2 (quoting *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.)). "'[I]n evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody of the child.'" *Id.* (quoting *In re S.R.*, 452 S.W.3d at 360).

Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child." *Id.* "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id.* "Parental and caregiver illegal drug use and drug-related criminal

activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id.*

At trial, there was evidence the Department became involved in this case when three-year-old I.L.A. needed medical intervention to remove a feeding tube and there was no responsible adult to consent to the procedure. Jessica R. and Daniel O. were both incarcerated at that time. Jessica R. had left the children with a woman named Heidi who had no authority to consent to medical care. In her brief, Jessica R. argues that because she was in jail at the time the children were removed, there is legally and factually insufficient evidence to support termination under subsection (D) grounds. However, in doing so, Jessica R. does not mention other evidence in the record to support endangerment of the children before their removal, including a pattern of domestic violence and use of illegal substances.

At trial, the caseworker testified that the Department began investigating this case "[d]ue to [Jessica R.] being incarcerated," "substance abuse," and "domestic violence." The caseworker testified about Jessica R.'s history with the Department. In 2012, Jessica R. was referred to family-based services, which ultimately resulted in those children being removed and her parental rights terminated. In 2016, Jessica R. was incarcerated for endangering a child, which also triggered a case with the Department. The referral in the instant case originated on February 11, 2021, at which time Jessica R. was incarcerated. Because of her incarceration, Jessica R. was not present to consent to necessary medical treatment for I.L.A., and she had not given the authority to consent to another responsible adult.

There was evidence that Jessica R. had been involved in incidents of domestic violence with Daniel O. during their six-year, on-and-off, relationship and with previous boyfriends, including I.L.A.'s father. There was also evidence admitted at trial that six-year-old D.J.R. said she had been exposed to multiple incidents of domestic violence, causing her to feel unsafe and

scared at her home. Four-year-old D.J.O. also reported being exposed to domestic violence and feeling unsafe in his home. He talked to the licensed professional counselor about "somebody having a gun" and "hiding in a closet." In addition to domestic violence, there was also evidence that Jessica R. used illegal substances before the removal of the children. Daniel O. admitted at trial that both he and Jessica R. used illegal substances and such use was "always" part of their relationship.

Further, there was evidence of the impact of Jessica R.'s conduct on the children. A licensed professional counselor, who is D.J.R.'s and I.L.A.'s therapist, testified that D.J.R. has post-traumatic stress disorder and is learning that she does not need "to parent her little sister, that she can trust the adults that are in her world to do that in a healthy and safe manner." She testified neither D.J.R. nor I.L.A. wish to return to the care of Jessica R. because they did not feel safe at home. The counselor also testified that she had six sessions with D.J.O., and while he did not specifically say he did not want to return home, he did say he did not feel safe living with Jessica R. Thus, in looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that Jessica R.'s pattern of domestic violence, her criminal conduct, and her illegal drug use produced an environment that endangered the physical or emotional well-being of the children. *See In re J.T.G.*, 121 S.W.3d at 125. Further, even in considering the disputed evidence, we conclude a trier of fact could have reasonably formed a firm belief or conviction that Jessica R. produced an environment that endangered the physical or emotional well-being of the children. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding under subsection (D).

### 2. *Subsection (E) Predicate Ground*

Subsection (E) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with

persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court must determine "whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being." *In re C.J.G.*, 2019 WL 5580253, at *2. Under both subsection (D) and (E), "endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re C.J.G.*, 2019 WL 5580253, at *3 (citing *In re M.C.*, 917 S.W.2d at 269). "However, there are some distinctions in the application of subsections (D) and (E)." *Id.* (citation omitted). Termination under subsection D may be based upon a single act or omission. *Id.* at *3 (citing *In re R.S.-T.*, 522 S.W.3d at 109). In contrast, termination under subsection E "may not rest on a single act or omission; it must be 'a voluntary, deliberate, and conscious course of conduct.'" *Id.* (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Additionally, "[i]n evaluating endangerment under subsection D, we consider the child's environment *before* the Department obtained custody of the child.'" *Id.* (quoting *In re S.R.*, 452 S.W.3d at360) (emphasis added). "'Under subsection E, however, courts may consider conduct *both before and after* the Department removed the child from the home.'" *Id.* (quoting *In re S.R.*, 452 S.W.3d at 360) (emphasis added).

"An endangerment finding often involves physical endangerment, but the statute does not require that the parent's conduct be directed at the child or that the child suffer actual injury." *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id.* (citation omitted). "Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id.* "Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E)." *Id.*; *see In re*

*J.O.A.*, 283 S.W.3d at 346 (holding evidence sufficient to support finding of endangerment even though father had made significant recent improvements because "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"); *In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).").

Here, the same evidence of Jessica R.'s pattern of domestic violence, her illegal drug use, and the ramifications noted in the children as testified to by the counselor support termination pursuant to subsection (E). In addition to this evidence of Jessica R.'s conduct before removal, there was also evidence related to her conduct after removal. While Jessica R. was not incarcerated at the time of trial, the caseworker testified Jessica R. had a pending "assault charge" related to her niece from an incident in November 2021. The caseworker further testified that Jessica R. continued to use illegal substances after removal. Jessica R. "show[ed] up to visits with her children with red eyes and slurred speech" and "[did] not test on a regular basis with the Department." *See In re T.N.J.J.*, No. 04-19-00228-CV, 2019 WL 6333470, at *5 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (explaining that the factfinder can reasonably infer from parent's failure to appear for drug testing that he was avoiding testing because he was using illegal drugs). Further, in February 2023, right before the underlying trial began, Jessica R. submitted to a urinalysis and tested positive for tetrahydrocannabinol.

Additionally, the caseworker testified about an incident that occurred a month before trial. The caseworker was present while Jessica R. was visiting the children. D.J.R. did not want to speak

with Jessica R. and instead played with toys. Jessica R. attempted to take a picture with the children, but D.J.R. did not cooperate. Jessica R. then said to D.J.R., "Well, then fine. You cannot come home, and I'll take the other two children home." D.J.R. responded by leaving the area. I.L.A. began taking pictures of Jessica R. and D.J.O., and then decided to also take a picture of D.J.R. In response, D.J.R. yelled at I.L.A. "to tell [Jessica R.] to go away and then kicked in" the direction of Jessica R. Jessica R. saw D.J.R.'s gesture and "got very aggressive and started yelling at [D.J.R.]," telling her not to kick, "and then picked up [D.J.R.] by her elbows and dragged her to the visitation room across the way." The caseworker testified D.J.R. was kicking and screaming for Jessica R. to let go of her, but Jessica R. would not "allow[] her to have her space." Jessica R. blocked D.J.R. from leaving the room and then grabbed D.J.R. "very aggressively and tried to restrain" D.J.R. "She gripped [D.J.R.] with her arms around and forced her to stay in one position on the ground." The caseworker intervened and attempted to deescalate the situation, telling Jessica R. to give D.J.R. some space until she "cools down." According to the caseworker, Jessica R. became more aggressive and picked up D.J.R., saying "I'm her mom. I can do whatever I want to do." The caseworker testified she again tried to redirect Jessica R. During the incident, Jessica R. hit and pushed the caseworker's co-worker. The police were called, and Jessica R. was arrested. The caseworker testified that her co-worker was pressing charges.

When asked about this incident on the witness stand, Jessica R. invoked her right not to incriminate herself under the Fifth Amendment. In a civil case, a factfinder may "draw reasonable inferences from a party's assertion of the privilege against self-incrimination." *Lozano v. Lozano*, 52 S.W.3d 141, 150 (Tex. 2001). Although parental rights are constitutional in nature, a termination proceeding is a civil proceeding for purposes of the privilege against self-incrimination. *Murray v. Texas Dep't of Fam. & Protective Servs.*, 294 S.W.3d 360, 367 (Tex. App.—Austin 2009, no pet.); *In re C.J.F.*, 134 S.W.3d 343, 352–53 (Tex. App.—El Paso 2003,

pet. denied). This is true even if there are pending criminal charges arising out of the same conduct. *Murray*, 294 S.W.3d at 367. Therefore, the trial court was free to draw a negative inference from Jessica R.'s refusal to answer questions about the incident described above involving D.J.R. and the caseworker.

Thus, in looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that Jessica R. engaged in conduct that endangered the physical or emotional well-being of the children. Further, even in considering the disputed evidence, we conclude a trier of fact could have reasonably formed a firm belief or conviction that Jessica R. engaged in conduct that endangered the physical or emotional well-being of the children. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding under subsection (E).

### 3. Best Interest of the Children

Jessica R. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2); *In re J.O.A.*, 283 S.W.3d at 344 (explaining legal and factual sufficiency standard). There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[3] In addition to these statutory factors, in considering the best interest of the child, a

---

[3]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the

factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[4] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet. denied) (noting that a best-interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied)). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.A.R.*, 672 S.W.3d at 722; *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for

---

child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[4] These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28; *In re E.A.R.*, 672 S.W.3d at 722.

Jessica R. argues that "[t]here is no evidence [she] is unable or unwilling to meet the children's physical and emotional needs or provide the child[ren] with a safe and stable home." She argues that she is employed at a restaurant and has housing for the children. She further emphasizes that her home is "safe and appropriate." However, as noted previously, there is evidence that Jessica R. has a pattern of criminal activity, domestic violence, and illegal substance abuse. As noted, there was also evidence of how Jessica R.'s conduct has negatively impacted the children. The children do not feel safe with their mother and do not desire to return to her. Further, from the evidence presented of the incident between Jessica R., D.J.R., and the caseworker, a rational factfinder could conclude that Jessica R. has not learned how to control her anger. There was also evidence that the children have bonded with their placements, who are meeting their needs. Finally, the caseworker testified that Jessica R. had not sufficiently changed the behaviors that led to the removal of the children. In looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that the termination of Jessica R.'s parental rights was in the children's best interest. Further, while Jessica R. points to her testimony that she has completed many services, has employment and housing, and believes she has changed her conduct, a rational trier of fact could have found her testimony not credible and determined termination of her rights was in the best interest of the children. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

### C. Daniel O.

#### 1. Predicate Grounds

Daniel O.'s parental rights were terminated pursuant to subsections (N) and (O). Subsection (N) allows termination of parental rights if a parent has constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months and: (1) the Department made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. *See* TEX. FAM. CODE § 161.001(b)(1)(N). Subsection (O) allows termination of parental rights if the parent fails to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse or neglect of the child. *See id*. § 161.001(b)(1)(O). On appeal, Daniel O. argues the evidence is legally and factually insufficient to support termination on either subsection (N) or subsection (O) grounds.

##### a. Subsection (N)

At the time of trial, Daniel O. was incarcerated for having committed the offense of being a felon in possession of a firearm and is serving a three-year sentence. He testified that he would be eligible for parole in January 2024 and that his discharge date is October 2024. He argues there is no evidence the Department made reasonable efforts to return his son D.J.O. to him under subsection (N) because he was never served with a service plan. Daniel O. does not challenge the other two requirements under subsection (N). Thus, we will address only whether there is legally

and factually sufficient evidence that the Department made reasonable efforts to return D.J.O. to Daniel O. under subsection (N).

"A family service plan is designed to reunify a parent with a child who has been removed by the Department." *In re A.Q.W.*, 395 S.W.3d 285, 288 (Tex. App.—San Antonio 2013, no pet.), *overruled on other grounds by In re J.M.T.*, 617 S.W.3d 604 (Tex. App.—San Antonio 2020, no pet.). "Implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent if the parent has been given a reasonable opportunity to comply with the terms of the plan." *Id*. at 289. Daniel O. argues that because there is no service plan related to him in the record and because there is no evidence he was served with such a service plan, the evidence is legally and factually insufficient to show that the Department made reasonable efforts to return his son to his care. However, implementation of a family service plan is not the only manner in which the Department can show that it made reasonable efforts. *See In re L.C.M.*, 645 S.W.3d 914, 921 (Tex. App.—El Paso 2022, no pet.) (rejecting appellant's argument that the absence of a properly executed service plan in the record equated to the Department not making reasonable efforts to return the child to the parent). The "Department's undertaking of reasonable reunification efforts 'does not necessarily mean the child must be physically delivered to the incarcerated parent.'" *Id*. (quoting *In re J.G.S.*, 550 S.W.3d 698, 704 (Tex. App.—El Paso 2018, no pet.)). Instead, "proof the Department made 'efforts to place the child with relatives may constitute legally and factually sufficient evidence to support the trial court's finding that the Department made reasonable efforts.'" *Id*. (quoting *In re J.G.S.*, 550 S.W.3d at 705).

Here, Daniel O. admitted during his testimony he had contact with the Department about the underlying case. Although Daniel O. was incarcerated for much of the pendency of the underlying case, he testified that when he was arrested for being a felon in possession of a firearm, he was able to "bond out" and learned about the underlying case from his mother. Daniel O. was

asked at trial: "So when you were out, was it made clear to you that there were things that you needed to do for this case?" Daniel O. replied, "I mean, yes, of course. That's proper procedure for any CPS case." The caseworker also testified that she made contact with Daniel O. and that Daniel O. gave her information so that she could locate his brother and study him as a possible placement for D.J.O. According to the caseworker, the Department attempted to conduct a home study of Daniel O.'s brother, but was unable to get in contact with him so the study was denied. The caseworker testified she attempted multiple times to contact Daniel O.'s brother.

In looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that the Department made reasonable efforts to return D.J.O. to Daniel O. Further, we hold in looking at the disputed evidence, the trial court could have reasonably determined the Department made reasonable efforts. Therefore, we hold the evidence is legally and factually sufficient to show that the Department made reasonable efforts to return D.J.O. to Daniel O. *See In re L.C.M.*, 645 S.W.3d at 922 (explaining that "the Department's efforts to place the child with relatives constitutes legally and factually sufficient evidence that reunification was attempted").

Having held the evidence is legally and factually sufficient to support termination under subsection (N), we need not reach Daniel O.'s issue relating to the sufficiency of the evidence to support termination on subsection (O) grounds. *See In re D.J.H.*, 381 S.W.3d at 611-12 (explaining that when the trial court terminates the parent-child relationship on multiple grounds, the court of appeals may affirm on any one ground because, in addition to finding that termination is in the child's best interest, only one predicate violation under section 161.001(1) is necessary to support a termination decree).

*2. Best Interest of J.M.O.*

Daniel O. argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in D.J.O.'s best interest. He points to evidence that he was close to all the children, including his son D.J.O. He emphasizes that he was in a relationship with Jessica R. for six or seven years and that he has known all three children since they were born "and was there for everything." While he admits in his brief that he and Jessica R. both used illegal drugs, he argues that "he tried to clean himself up and better himself by checking himself into rehab when Jessica R. was pregnant with D.J.R." He also recognizes that there is evidence D.J.R. made an outcry of sexual abuse against him, but points to his own testimony where he testified the accusation was false and Jessica R. "was under the influence and was very high when she made the allegations."

As described above, there was evidence in this case of domestic violence between Daniel O. and Jessica R. There was also evidence that Daniel O. and Jessica R. used illegal substances and that Daniel O. has been incarcerated multiple times, including being incarcerated at the time of trial. And, while Daniel O. argues the evidence of D.J.R.'s outcry of sexual abuse against him was false, the trial court was the factfinder and the judge of credibility issues in this case. *See In re J.O.A.*, 283 S.W.3d at 345. The trial court could have reasonably believed Daniel O. was not being truthful in his denials. *See id*.

Additionally, D.J.O. was only six years old at the time of trial and had not seen Daniel O. in over two years. There was evidence D.J.O. had anger management issues and his past behaviors resulted in him being placed separately from his sisters. The licensed professional counselor testified that "there was a consensus that if [D.J.O.] could get more individualized attention that it might be easier to stabilize his behaviors." The counselor testified she supported D.J.O. being placed separately because he "was having a lot of issues that—and as was [D.J.R.]—but [D.J.O.]

especially when they were all three in the home together." "And it just seemed like [D.J.O.] might have a better chance of getting the help that he needed, the support that he needed if he was able to get more intensive and individualized and specialized attention." According to the counselor, D.J.O. felt safe with his foster placement, who was meeting his needs. We hold the evidence is legally sufficient to support the trial court's best-interest finding.

While Daniel O. points to his own testimony that he had a close relationship with his son and that his brother may be a possible placement for D.J.O., when we look at the entire record, we conclude the evidence is factually sufficient to support the trial court's best-interest finding. We thus conclude the trial court did not err in terminating Daniel O.'s parental rights.

### 3. Conservatorship finding

Daniel O. further argues the trial court abused its discretion in appointing the Department as D.O.'s managing conservator. However, as we have determined the trial court did not err in terminating Daniel O.'s parental rights, his argument has no merit. *See In re C.J.Y.*, No. 04-20-00009-CV, 2020 WL 3441248, at *7 (Tex. App.—San Antonio June 24, 2020, pet. denied); *see also In re M.R.D.*, No. 04-19-00524-CV, 2020 WL 806656, at *9 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (holding that because the trial court did not err in terminating appellant's rights, appellant no longer had any legal rights to her children and could not challenge the portion of the termination order that related to the appointment of conservators); *In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at *6 (Tex. App.—San Antonio 2017, pet. denied) (same).

### 4. Ineffective Assistance of Counsel

Finally, Daniel O. argues that he received ineffective assistance of counsel because (1) Petitioner's Exhibit 2 was not the exhibit the Department purported it to be and was admitted without objection; and (2) his trial counsel had no contact with him before trial. To successfully raise an ineffective assistance of counsel claim in a parental-termination case, an appellant must

meet the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a parent appealing a termination order must show by a preponderance of the evidence her "trial counsel's performance fell below an objective standard of reasonableness" and he was "prejudiced by trial counsel's defective performance." *In re J.A.B.*, 562 S.W.3d 726, 729 (Tex. App.—San Antonio 2018, pet. denied) (citing *Strickland*, 466 U.S. at 687).

In determining whether trial counsel's performance fell below an objective standard of reasonableness, we "give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *In re J.M.O.*, 459 S.W.3d 90, 93 (Tex. App.—San Antonio 2014, no pet.). An appellant bears the burden to overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "We will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy." *In re J.R.R.*, No. 04-22-00076-CV, 2022 WL 3047099, at *2 (Tex. App.—San Antonio Aug. 3, 2022, no pet.) (quoting *In re K.L.L.H.*, No. 06-09-00067-CV, 2010 WL 87043, at *6 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied)). Accordingly, ineffective assistance of counsel claims must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness. *In re D.H.G.*, No. 04-21-00183-CV, 2021 WL 5088738, at *3 (Tex. App.—San Antonio Nov. 3, 2021, pet. denied); *In re L.C.W.*, 411 S.W.3d 116, 127 (Tex. App.—El Paso 2013, no pet.).

"[T]o show prejudice, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *In re J.M.O.*, 459 S.W.3d at 93 (internal quotation marks omitted). "'Reasonable probability' is that which is 'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S.

at 694). A failure to establish either prong of the *Strickland* test is fatal to an ineffective assistance claim. *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003).

The record before us is silent as to trial counsel's strategy at trial. Daniel O. did not file a motion for new trial where his trial counsel was called as a witness to explain his actions. *See In re L.C.W.*, 411 S.W.3d at 128-29 (explaining that trial court should be afforded an opportunity to explain his actions before being "denounced as ineffective"). Thus, the record does not reflect why trial counsel, or any other attorney present (including Jessica R.'s appointed counsel), failed to object to the admission of Petitioner's Exhibit 2. As the record is silent on counsel's reasoning or strategy, we cannot "speculate to find trial counsel ineffective." *In re J.R.R.*, 2022 WL 3047099, at *2. Moreover, even if we were to conclude that trial counsel was ineffective by failing to object a single time to one exhibit, we note that Daniel O. has not shown prejudice in this case. Much of the evidence discussed in State's Exhibit 2 was cumulative of other evidence admitted. *See In re R.L.A.*, No. 12-12-00317-CV, 2013 WL 1092210, at *11 (Tex. App.—Tyler Mar. 15, 2013, no pet.) (explaining that admission of the challenged evidence is harmless if the evidence was cumulative).

With regard to Daniel O.'s second assertion of ineffectiveness, the record reflects that when trial began on March 3, 2023, his trial counsel announced, "not ready," and stated that he had not had contact with Daniel O. since the inception of the proceedings. Although the record does not reflect that counsel requested a continuance, after trial began, the Department called the caseworker to testify only briefly before trial was recessed until a later date. Trial resumed on April 17, 2023, recessed a second time, and resumed for a final time on May 23, 2023, at which time Daniel O. was present, and his trial counsel announced, "ready."

The record is silent as to what efforts counsel made to contact Daniel O. before trial. On a silent record, we cannot presume his efforts were unreasonable. *See In re J.R.R.*, 2022 WL

3047099, at *2. Additionally, Daniel O. has failed to prove he was prejudiced by counsel's actions. On the first day of trial the caseworker gave very brief testimony and was recalled on the third day of trial at which time Daniel O. was present and had ample opportunity to cross examine the caseworker. Thus, we cannot conclude Daniel O. has shown he was prejudiced by his counsel's actions. We hold Daniel has not met his burden of showing he was denied effective assistance of counsel.

## CONCLUSION

For the reasons stated above, we affirm the trial court's order terminating Jessica R.'s and Daniel O.'s parental rights.

Liza A. Rodriguez, Justice